# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

LARRY JAMES FORSYTHE,

    Petitioner,

vs.

STATE OF NEVADA, et al.,

    Respondents.

Case No. 2:10-CV-00253-KJD-(GWF)

**ORDER**

    Before the court are the amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (#7) and respondents' answer (#26). The court finds that petitioner is not entitled to relief, and the court denies the amended petition.

    Petitioner was caught picking the pocket of an undercover detective. When he was arrested, he gave the police the alias "Scott Alan Bluethman." Petitioner agreed to plead guilty to attempted larceny from the person. Ex. 3.[1] The property involved was $20. For that value, the completed crime of larceny is a category C felony. Nev. Rev. Stat. § 205.270(1)(a). An attempt to commit the same crime is either a category D felony or a gross misdemeanor. Nev. Rev. Stat. § 193.330(1)(a)(4). The state district court accepted petitioner's plea and, pursuant to the negotiations, released him on his own recognizance until the time of sentencing. Ex. 4, at 4. The state district court also ordered petitioner to go to the office of the Division of Parole and Probation so that the division could prepare a presentence investigation report. Id. Petitioner did not go to the

---

[1] All exhibits are attached to respondents' motion to dismiss (#15).

parole and probation office, nor did he appear for his sentencing hearing. Ex. 5. The state district court issued a bench warrant. Id. After petitioner was arrested on the warrant, the state district court treated the crime as a category D felony, sentencing petitioner to a minimum term of 19 months in prison and a maximum term of 48 months in prison. Ex. 7. Petitioner did not appeal the judgment of conviction.

Petitioner filed a state habeas corpus petition. Ex. 8. The state district court denied the petition. Ex. 9. Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 10.

Petitioner then commenced this action. His original petition (#1) contained two grounds, numbered 2 and 3, that alleged errors in the state habeas corpus proceedings. The court dismissed those grounds because such errors are not addressable in federal habeas corpus. Order, at 2 (#4) (citing Franzen v. Brinkman, 877 F.2d 26, 26 (9th Cir. 1989)). The court directed petitioner to correct defects in other grounds. Petitioner then filed an amended petition (#7). The amended petition contains three grounds, numbered 1, 4, and 5.

Congress has limited the circumstances in which a federal court can grant relief to a petitioner who is in custody pursuant to a judgment of conviction of a state court.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 131 S. Ct. 770, 784 (2011).

> Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Richter, 131 S. Ct. at 785. "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Id. (citation omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. (citation omitted).

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

Richter, 131 S. Ct. at 786.

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id., at 786-87.

In ground 1, petitioner alleges several instances of ineffective assistance of counsel. "[T]he right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 & n.14 (1970). A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

Strickland expressly declines to articulate specific guidelines for attorney performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the duty to advocate the defendant's cause, and the duty to communicate with the client over the course

of the prosecution. 466 U.S. at 688. The Court avoided defining defense counsel's duties so exhaustively as to give rise to a "checklist for judicial evaluation of attorney performance. . . . Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." Id. at 688-89.

Review of an attorney's performance must be "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight." Strickland, 466 U.S. at 689. A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (citation omitted).

The Sixth Amendment does not guarantee effective counsel per se, but rather a fair proceeding with a reliable outcome. See Strickland, 466 U.S. at 691-92. See also Jennings v. Woodford, 290 F.3d 1006, 1012 (9th Cir. 2002). Consequently, a demonstration that counsel fell below an objective standard of reasonableness alone is insufficient to warrant a finding of ineffective assistance. The petitioner must also show that the attorney's sub-par performance prejudiced the defense. Strickland, 466 U.S. at 691-92. There must be a reasonable probability that, but for the attorney's challenged conduct, the result of the proceeding in question would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

First, petitioner claims that counsel gave poor advice, because counsel promised petitioner that he would be convicted of a gross misdemeanor, with a sentence of 12 months probation.[2] On this issue, the Nevada Supreme Court held:

> Sixth, appellant claimed that trial counsel was ineffective for advising him to enter a guilty plea to an unknown sentence. It appears that appellant believed that trial counsel should only have advised him to enter a guilty plea if he was guaranteed a particular sentence and guaranteed to have his offense treated as a gross misdemeanor. Appellant failed to demonstrate that he was prejudiced. Appellant was informed at the plea canvass and in the

---

[2]The gross-misdemeanor penalty for an attempt to commit a category C felony is imprisonment in the county jail for not more than 1 year and a fine of not more than $2,000. Nev. Rev. Stat. § 193.330(1)(a)(4).

-4-

> written guilty plea agreement that the offense could be treated either as a gross misdemeanor or a felony, and the penalties for each were set forth in the written guilty plea agreement. Appellant was informed that matters of sentencing were left in the discretion of the district court. Therefore, we conclude that the district court did not err in denying this claim.

Ex. 10, at 6. Both the written guilty plea agreement and the transcript of the plea hearing confirm the facts as stated by the Nevada Supreme Court. See Ex. 3, at 1-2; Ex. 4, at 3. To that extent, the Nevada Supreme Court reasonably applied Strickland. Furthermore, the written guilty plea agreement had provisions that applied in petitioner's particular case. The prosecution agreed not to recommend a sentence. Ex. 3, at 1. However, if petitioner did not appear for his sentencing hearing, then the state would regain the right to argue for any lawful sentence. Ex. 3, at 2-3. Because petitioner did not appear for his scheduled sentencing hearing, he removed any constraints upon the sentence that could be imposed. Counsel had nothing to do with petitioner's own behavior.

      Second, petitioner claims that counsel was ineffective for failing to obtain the presentence investigation report prior to entering his plea. On this issue, the Nevada Supreme Court held:

> [A] presentence investigation report is not an evidentiary document for trial; it is prepared after a guilty plea or jury verdict. NRS 176.135. Appellant failed to demonstrate that there was a reasonable probability that he would not have entered a guilty plea based upon the alleged deficiencies. Therefore, we conclude that the district court did not err in denying this claim.

Ex. 10, at 4. Counsel could not have obtained a presentence investigation report before petitioner entered his plea, even if she had tried, because the report did not yet exist. The Nevada Supreme Court also considered the possibility that counsel should have investigated petitioner's criminal history. It ruled:

> To the extent that appellant claimed trial counsel was ineffective for failing to obtain a criminal history report for appellant, appellant failed to demonstrate that there was a reasonable probability that he would not have entered a guilty plea in the instant case had trial counsel obtained a criminal history report.

Ex. 10, at 3. Even now, petitioner does not explain how counsel's knowledge of petitioner's criminal history would have led petitioner to reject the offered plea. At the sentencing hearing, the judge noted that petitioner's criminal history included 6 felonies and 14 misdemeanors. Ex. 6, at 2. If petitioner went to trial and was found guilty, if the prosecution gave the correct proof of those

prior felonies, and if the judge agreed that petitioner should be treated as habitual criminal, then petitioner faced possible prison sentences of life without the possibility of parole, life with the eligibility for parole starting after 10 years, or 25 years with the eligibility for parole starting after 10 years. See Nev. Rev. Stat. § 207.010(1)(b). Petitioner's criminal history would have led competent, reasonable counsel to urge even more emphatically that petitioner accept the offered plea, because it removed the possibility of adjudication as a habitual criminal. The Nevada Supreme Court reasonably applied Strickland.

Third, petitioner claims that counsel should not have advised petitioner to plead guilty because the discovery contained only one affidavit in the discovery, and it contained second-hand testimony from someone who was not present during the crime. Furthermore, petitioner believed that the evidence would show that he had been entrapped. On this issue, the Nevada Supreme Court held:

> Second, appellant claimed that trial counsel was ineffective for failing to "cross-examine" the State's evidence to look for inconsistencies. The only inconsistency specifically identified was the fact that discovery documents stated that the money appellant took from the undercover detective's pocket included twenty one-dollar-bills whereas the presentence investigation report stated that it was a single twenty-dollar-bill. Appellant failed to demonstrate that his trial counsel's performance was deficient or that he was prejudiced. Appellant's guilty plea obviated the need for trial counsel to "cross-examine" any inconsistencies in the evidence. More importantly, a presentence investigation report is not an evidentiary document for trial; it is prepared after a guilty plea or jury verdict. NRS 176.135. Appellant failed to demonstrate that there was a reasonable probability that he would not have entered a guilty plea based on the alleged deficiencies. Therefore, we conclude that the district court did not err in denying the claim.
>
> Third, appellant claimed that trial counsel was ineffective for failing to pursue an entrapment defense. Appellant failed to demonstrate that his trial counsel's performance was deficient or that he was prejudiced. Appellant's guilty plea obviated the need for trial counsel to pursue a defense to the charge. In entering his guilty plea, appellant acknowledged that he had discussed defenses, defense strategies, and any circumstances in his favor with his counsel.
>
> Further, the success of an entrapment defense was highly questionable in this case, making the risks of trial much greater. An entrapment defense consists of two elements: The State presenting the opportunity to commit a crime and a defendant who is not predisposed to commit the act. Miller v. State, 121 Nev. 92, 95, 110 P.3d 53, 56 (2005). In this case, the police report indicates that the police were conducting a street operation, in which an undercover detective posed as a "plausible alternative victim to persons that are predisposed to commit crimes of opportunity like robbery and larceny from [the] person." The undercover detective, leaning against the wall of a building, had a roll of money in his breast pocket behind a pack of cigarettes—the money was not "blatantly obvious to passerbys," but required effort to discover. Appellant approached the undercover detective and asked for a cigarette, which was given to him. An unknown male in the area, coming to the detective's

> aid, approached appellant and told him to leave the undercover detective alone. After a verbal altercation with the unknown male, appellant left the scene, and the unknown male left shortly after determining that the undercover detective was safe. Appellant then returned, asked for another cigarette, and removed the money from the undercover detective's pocket. Appellant was arrested and read his rights. Appellant told the detective interviewing him that he took the money to secure it for "Jeremy," the name he gave for the undercover detective. Under these facts, appellant failed to demonstrate that there was a reasonable probability that he would not have entered a guilty plea and would have insisted on going to trial.

Ex. 10, at 3-5. This was a reasonable application of Strickland for several reasons. First, even if the only affidavit in the pre-trial discovery was by a person who had no first-hand information of the crime, that does not mean that it was the only evidence that the prosecution would have presented if petitioner had gone to trial. In all likelihood, the undercover detective whose pocket petitioner picked and any other police officers observing the incident would have testified. According to allegations in ground 5, audio and video recordings of the incident existed. The prosecution might even have learned who the Good Samaritan was and called him to testify. Second, if petitioner chose to go to trial, then petitioner might have been facing adjudication as a habitual criminal because of his criminal history, as described above. Third, petitioner has never explained how he was entrapped into committing larceny. The facts as described above do not show that petitioner was not predisposed to committing larceny. Instead, they show that petitioner did intend to commit larceny but the intended victim happened to be an undercover decoy. Miller v. State, which the Nevada Supreme Court cited for its definition of entrapment, had similar facts: A person approached an undercover police officer, initiated a conversation, stole $20, and claimed that he was entrapped when caught. The Nevada Supreme Court ruled that the defendant in Miller was not entrapped. 110 P.3d at 56-57. Competent counsel, knowing that entrapment was a very unlikely defense, reasonably would have argued against pursuing it at trial.

Fourth, petitioner claims that his attorney, Claudia Garcia, was not present at sentencing and failed in her duties of loyalty and as an advocate. Petitioner presented the issue differently in the state courts, but the Nevada Supreme Court held:

> Seventh, appellant appeared to claim that trial counsel was ineffective for failing to correct errors in his presentence investigation report. Appellant appeared to indicate the number of felonies was wrongly listed at two, when he only committed one prior felony. Appellant failed to demonstrate prejudice. Trial counsel and appellant made arguments regarding the criminal history in the presentence investigation report. Appellant failed to demonstrate that

> there was a reasonable probability of a different outcome at sentencing had trial counsel made any further arguments. Therefore, we conclude that the district court did not err in denying this claim.

Ex. 10, at 7. The record belies the contention that counsel was not present at sentencing. Garcia's colleague, Christopher Jones, represented petitioner at his sentencing hearing. Jones even argued that three of petitioner's prior felony convictions would not have been felonies in Nevada, in hope of obtaining a lesser sentence for petitioner. Ex. 6, at 5. However, petitioner did himself no favors. Not only did he have an extensive criminal history, he did not appear for his scheduled sentencing hearing, thus allowing the prosecution to argue for a sentence.[3] The Nevada Supreme Court reasonably applied Strickland.

Petitioner styles ground 4 as a claim that the Equal Protection Clause of the Fourteenth Amendment was violated because petitioner was promised to be sentenced for a gross misdemeanor, and he did not receive the benefit of the bargain. The allegations do not describe an equal-protection violation. In its order (#25) denying the motion to dismiss (#15), the court construed the ground as a claim that counsel was ineffective, and that petitioner's plea was unknowing and involuntary, because counsel failed to ensure that petitioner was sentenced for a gross misdemeanor. As such, ground 4 is the same as petitioner's first claim of ineffective assistance of counsel in ground 1. Ground 4 is without merit for the same reason.

Petitioner styles ground 5 as a claim that the Due Process Clause of the Fourteenth Amendment was violated because counsel advised petitioner to plead guilty, when petitioner told counsel that exculpatory evidence existed. Petitioner alleges that the arresting officers told him that audio and video recordings of the incident existed, and petitioner argues that had counsel reviewed the evidence, it would have shown that petitioner was entrapped. As such, ground 5 is the same as petitioner's third claim of ineffective assistance of counsel in ground 1. Ground 5 is without merit for the same reason.

---

[3] Actually, the prosecution did not argue for a particular sentence. Before the prosecutor said anything, the judge stated that he would impose a sentence of 19 months to 48 months imprisonment, the maximum possible sentence. Ex. 6, at 2.

1    Reasonable jurists would not find the court's conclusions, either in this order or in the earlier
2 dismissal of grounds 2 and 3 of the original petition (#1), to be debatable or wrong, and the court
3 will not issue a certificate of appealability.
4    Petitioner has submitted a motion for court order and/or summary judgment (#47). The
5 court denies this motion because the court is denying the amended petition (#7).
6    IT IS THEREFORE ORDERED that the motion for court order and/or summary judgment
7 (#47) is **DENIED**.
8    IT IS FURTHER ORDERED that the amended petition for a writ of habeas corpus (#7) is
9 **DENIED**.  The clerk of the court shall enter judgment accordingly.
10    IT IS FURTHER ORDERED that a certificate of appealability is **DENIED**.
11    DATED: September 28, 2012

_____
KENT J. DAWSON
United States District Judge